**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JEREMY DEMOND GOOLSBY,**

       **Petitioner,**

       v.                                  **CIVIL ACTION NO. 1:04CV145**
                                                **(Judge Stamp)**

**JOHN ASHCROFT, U.S. Attorney General;
HARLEY G. LAPPIN, Director Bureau of Prisons;
and AL HAYNES, Warden, FCI Morgantown, West Va.,**

       **Respondents.**

**REPORT AND RECOMMENDATION/OPINION**

**I. BACKGROUND**

This matter is pending before me for Report and Recommendation pursuant to LR PL P 83.09. On March 22, 2004, the *pro se* petitioner, Jeremy Demond Goolsby, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241.[1] In his application, the petitioner challenges the new policy of the Bureau of Prisons [BOP] regarding placement in a community corrections center ["CCC"]. The petitioner was convicted of conspiracy to possess with the intent to distribute and to distribute cocaine base.[2] On November 15, 2000, he was sentenced to 78 months imprisonment.

The petitioner asserts that effective December 2002, the BOP implemented a new policy which limited pre-release designations to CCC's to the last 10% of an inmate's prison term.

---

[1]The Application for Habeas Corpus was filed in the United States District Court for the District of Columbia. The District of Columbia transferred the case to this district on April 20, 2004. However, the file was not received from the District of Columbia until July 1, 2004.

[2]The petitioner does not indicate in which Court he was convicted and sentenced.

According to the petitioner, the new policy is being applied retroactively to him in violation of the Ex Post Facto Clause. The petitioner also asserts that the new policy violates the Administrative Procedures Act ["APA"].

The petitioner requests that the Court compel the BOP to disregard its 10% policy and reconsider his eligibility for pre-release designation under the pre-December 2000 criteria. In the alternative, he requests that his sentence be corrected under Rule 36 of the Federal Rules of Criminal Procedure.

## II. ANALYSIS

### A. Exhaustion

The petitioner admits that he has not exhausted his administrative remedies. Federal inmates are required to exhaust their administrative remedies prior to filing a §2241 petition. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); Colton v. Ashcroft, 299 F. Supp. 2d 681 (E.D. Ky 2004).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. §542. In Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943-44 (D.Md. 1997), the court explained that 28 C.F.R. § 542 mandates a four-step administrative process beginning with attempted informal resolution with prison staff. If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden, followed by an appeal to the regional director of the Federal Bureau of Prisons. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of the General Counsel. Id.

While the petitioner did not exhaust his administrative remedies regarding this issue, a number of courts have already found that requiring inmates to challenge the BOP's new policy

regarding placement in a CCC through the administrative process would be futile. See, e.g., Fagiolo v. Smith, 326 F. Supp. 2d 589, 590 (M.D. Pa. 2004)("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. §3624(c)"); Zucker v. Meinfee, 2004 WL 102779 (S.D. N.Y. Jan. 21, 2004)("[G]iven the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case" the petitioner's failure to exhaust was excused as being futile). Thus, the undersigned finds that futility excuses exhaustion.

**B. The BOP's New Policy does not Violate the Ex Post Facto Clause or the Administrative Procedures Act.**

Prior to December 2002, the BOP had a policy of placing prisoners in halfway houses for up to the last 6 months of their sentences, notwithstanding the length of their sentences. See BOP Program Statement 7310.04. However, the BOP's policy changed as a result of an opinion from the U.S. Department of Justice's Office of Legal Counsel ["OLC"]. On December 13, 2002, the OLC issued a memorandum opinion regarding "Bureau of Prisons practice of placing in community confinement offenders who have received sentences of imprisonment." The memorandum provided that the BOP's long-standing practice of following judicial recommendations and designating certain offenders directly to community corrections centers ["CCCs"] was unlawful. While the OLC opinion noted that §3621(b) provides the BOP with the authority to choose a prisoner's place of imprisonment, the OLC determined, based on cases regarding U.S.S.G. §5C1.1, that confinement in a CCC is not imprisonment. Thus, the OLC determined that §3621(b) does not provide the BOP with authority to place a prisoner in a CCC. The OLC memorandum also provided in relevant part as follows:

> Your office has advised us that BOP, in exercising its authority under section

3

> 3624(c), has sometimes not abided by the time limitation set forth in that section. The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period "not to exceed six months, of the last 10 per centum of the time to be served," 18 U.S.C. §3624, and we see no basis for disregarding this time limitation.

[OLC Memorandum, p. 7, n.6].

As a result of the December 13, 2002 OLC memorandum, the BOP's current policy is that inmates may be sent to a halfway house during the last ten percent of their sentence, not to exceed six months."[3]

---

[3]Two statutes are pertinent in this case -18 U.S.C. §3621(b) and §3624(c). Section 3621(b) provides as follows:

> **(b) Place of imprisonment.**--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> **(1)** the resources of the facility contemplated;
>
> **(2)** the nature and circumstances of the offense;
>
> **(3)** the history and characteristics of the prisoner;
>
> **(4)** any statement by the court that imposed the sentence--
>
> **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> **(B)** recommending a type of penal or correctional facility as appropriate; and
>
> **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

18 U.S.C. §3624(c) provides as follows:

**(c) Pre-release custody**
The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a

The petitioner asserts that the retroactive application of this policy violates the Ex Post Facto Clause. The Ex Post Facto Clause of the Constitution provides that "no . . . ex post facto law shall be passed." U.S. Const. Art. I, § 9. As the Supreme Court has explained, "[t]o fall within the *ex post facto* prohibition, a law must be retrospective–-that is, it must apply to events occurring before its enactment–-and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citations and internal quotations omitted).

The Fourth Circuit has not addressed the issue of whether the BOP's 10% rule violates the Ex Post Facto Clause. However, the Fourth Circuit has previously determined in regard to the Virginia Parole Board's revocation of good time credit upon revoking mandatory parole that "a change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws." Warren v. Baskerville, 233 F. 3d 204, 207 (4th Cir. 2000). Further, the District of Maryland has held that "[b]ecause the OLC Memorandum is an interpretative rule, the Ex Post Facto Clause is inapplicable." Kiley v. Federal Bureau of Prisons, 333 F. Supp. 2d 406, 411 (D.Md. 2004)(footnote omitted)[4]; see also Cohn v.

---

term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody

[4]However, in Tipton v. Fed. Bureau of Prisons, 262 F. Supp. 2d 633 (D. Md. 2003), the District of Maryland addressed whether the BOP's policy of no longer allowing direct placement in a CCC was valid. The court determined that the policy was not valid and granted the petitioners a preliminary injunction. The court stated that the BOP's interpretation of the statutory scheme is erroneous because the "plain language of 18 U.S.C. §3621(b) permits the BOP to designate a community confinement center as the place of imprisonment." The District of Maryland further stated that "there is a strong argument

5

Federal Bureau of Prisons, 302 F. Supp. 2d 267, 275 (S. D. NY 2004)( the BOP's 10% policy does not violate the Ex Post Facto Clause because "it merely corrects the BOP's erroneous prior interpretation of pre-existing law.")

However, in Schorr v. Menifee, 2004 WL 1320898 (S.D. N. Y 2004), the court ruled that "the BOP 10% Rule operated to increase the punishment for Schorr's crime, and did so retroactively." Id. at *4. The court further found that "an interpretation of a statutory authority purporting to clarify or interpret the law can have substantive impact. Where an agency alters a permissible statutory interpretation and substitutes a new interpretation of the same statute, that action violated the Ex Post Facto Clause if it has a retroactive and disadvantageous effect on a prisoner." Id. at *5. According to the court, the pre-2002 policy was a "permissible interpretation of the BP's statutory authority" and "because the pre-2002 BOP policy was not a clearly erroneous application of the law, [the] Court . . . held that the December 2002 change has the effect of substantive law, and was not merely interpretative." Id. at *6. Thus, the court found that the BOP policy violated the Ex Post Facto Clause.

The undersigned finds that the BOP corrected its prior administrative policy by implementing the current policy which operates within the letter of the statute and appears to meet the spirit and intent of the statute. Because the BOP did not change the statute but only acted within its discretion, to change an erroneous interpretation of pre-existing law, it cannot be found to create an ex post facto law. In fact, based on the fact that the petitioner asserts that he was sentenced to

---

that the new rule violates the ex post facto clause and the requirements of due process. The sentences in these cases were entered with the expectation that the BOP would exercise its discretion in determining whether to follow the judge's recommendation for placement in a community confinement center. That expectation was fulfilled when the defendants were designated to the community confinement centers. Neither the defendants, counsel, or the court were aware that the BOP would later make a designation on the basis of a rule that eliminated that long-standing discretion." Id. at 637.

78 months incarceration, the new policy apparently would have no impact on him as 10% of his sentence is 7.8 months and even under the old policy he was limited to 6 months in the halfway house.

Further, the petitioner's argument that the new policy violates the APA, is without merit.

5 U.S.C. §553 requires notice of the proposed rule and a public comment period. <u>Chen Zhou Chai v. Carroll</u>, 48 F.3d 1331 (4th Cir. 1995). However, the APA does not apply to interpretative rules. 5 U.S.C. §553(b)(3). The BOP's new policy has been deemed an interpretative rule and not a new rule and thus, does not violate the APA. See <u>Kiley v. Federal Bureau of Prisons</u>, 333 F. Supp. 2d 406 (D. Md. 2004); <u>Skelskey v. Deboo</u>, 332 F. Supp. 2d 485 (D. Conn. 2004)(the BOP did not create a new rule of law but merely changed its interpretation of §3624(c) to comply with the requirements of the statutes.); <u>Adler v. Menifee</u>, 293 F. Supp. 2d 363 (S.D.N.Y. 2003); but see <u>Tipton v. Federal Bureau of Prisons</u>, 262 F. Supp. 2d 633 (D. Md. 2003)(new BOP policy regarding direct placement appears to violate the APA because the notice and comment period were not met).

The undersigned finds that the BOP's new policy is an interpretative rule and does not violate the APA.

Lastly, the petitioner is not entitled to relief under Rule 36 of the Federal Rules of Criminal Procedure. Rule 36 provides as follows:

> After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.

The petitioner was not convicted and sentenced in the Northern District of West Virginia. Further, the petitioner sets forth nothing which reveals there was a clerical error in judgment.

7

Consequently, the petitioner is entitled to no relief.

### III. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition, be DENIED and DISMISSED WITH PREJUDICE.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Chief Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation/Opinion to the *pro se* petitioner.

DATED: April 29, 2005

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE